SUBSEQUENT INJURY FUND *v.* THOMAS ET AL.

[No. 225, September Term, 1974.]

*Decided August 6, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*J. Kent Leonnig,* Special Assistant Attorney General, with whom were *Francis B. Burch,* Attorney General, *William H. Kable* and *Albert A. Levin,* Special Assistant Attorneys General, on the brief, for appellant.

*Joel H. Pachino,* with whom were *Friedman, Pachino & Friedman* and *George D. Edwards* on the brief for Edward Thomas; *Alfred M. Porth, Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief for Baltimore County Revenue Authority and Insurance Company of North America, for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

The question in this case concerns the Subsequent Injury Fund's liability under the Workmen's Compensation Law, Maryland Code (1964 Repl. Vol., 1974 Cum. Supp.), Art. 101, § 66, for that portion of the claimant's disability attributable

to the deterioration, occurring after a compensable occupational injury, of a pre-existing impairment.[1]

On May 25, 1970, Edward Thomas, then 65 years old, injured his back in the course of his employment with the Baltimore County Revenue Authority. A claim for compensation under the Workmen's Compensation Law was duly filed, and on August 5, 1970, the Workmen's Compensation Commission determined that Thomas was temporarily totally disabled and entitled to compensation. The award was subject to a further determination by the Commission as to whether Thomas had sustained any permanent disability.

---

1. Section 66 provides in part:
    "(1) *Permanent disability or death due to combined effects of impairment and subsequent injury; reimbursement for supplemental allowance payments made under § 36.* — Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the 'Subsequent Injury Fund,' created for such purpose, in the manner described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.
    "Benefits from the Subsequent Injury Fund hereunder shall not be payable unless the combined effects resulting from a previous impairment and a subsequent accidental injury result in a permanent disability exceeding 50 per centum (50%) of the body as a whole. * * * "

The Legislature, by Ch. 638 of the Acts of 1975, amended § 66 (1), clarifying the issue which we here consider. That amendment, however, does not control this case as it applies only to injuries that occur on and after July 1, 1975.

Thomas continued to experience pain in his lower back and underwent two back operations in 1971. However, the operations were not successful in relieving Thomas's pain. Additionally, he became visibly nervous and restless, and suffered from tremors or "shakes." Because of this, he was not able to return to work, and filed for compensation for a permanent disability in 1972. The Revenue Authority impleaded the Subsequent Injury Fund and raised the issue of apportionment.

The Commission found that Thomas sustained a 60% permanent disability as a result of the combination of the May 25, 1970, accident and a pre-existing condition. A 40% permanent disability was attributed to the accidental injury of May 25, 1970, and a 20% permanent disability was attributed to the pre-existing disease which the Commission characterized as "degenerative asymptomatic arthritis, hypertrophic arthritis, arterio-sclerotic cerebral vascular disease." Although the Commission said that Thomas was "technically" permanently totally disabled as of the time of the hearing in 1972, it found that a "progressive condition subsequent to the accidental injury" caused Thomas to be totally disabled, and that this condition had not been "aggravated, acerbated, nor precipitated by the accidental injury." Therefore, the Commission held that Thomas was not entitled to total disability benefits. He was given an award based on a 60% disability, with the employer ordered to pay a sum representing a 40% disability, and the Fund a sum representing a 20% disability. Thomas requested, and was granted, a rehearing to consider whether or not he was totally disabled and thus entitled to an award for a 100% disability. The Commission reiterated its position that the additional 40% disability Thomas sought was due to progressive deterioration subsequent to and unrelated to the accidental injury, and was therefore not compensable.

Thomas then appealed from the decision of the Commission to the Circuit Court for Baltimore County, contending that the Commission's findings were inconsistent, and that he was entitled to compensation for total permanent disability. The circuit court (Haile, J.)

affirmed the decision of the Commission, holding that under the circumstances of this case the proper date for determining what percentage of the disability is attributed to the pre-existing impairment is the date of the subsequent injury. Thomas appealed from this decision to the Court of Special Appeals. That court, in *Thomas v. Balto. Co. Revenue Auth.*, 23 Md. App. 261, 326 A. 2d 750 (1974), reversed, holding that the extent of both the pre-existing impairment and the impairment resulting from the subsequent occupational injury is to be determined when maximum improvement from the subsequent injury alone is attained. The Subsequent Injury Fund filed a petition for certiorari which we granted.[2]

Under Art. 101, § 66 (1), a claimant is entitled to receive benefits from the Subsequent Injury Fund only when several conditions are satisfied. First, the employee must have a "permanent impairment due to a previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment." Second, the employee must incur "a subsequent disability by reason of a personal injury, for which compensation is required by" the Workmen's Compensation Act. Finally, the "previous impairment and subsequent accidental injury," when combined, must result in total disability or a permanent partial disability which exceeds 50% of the body and which is "substantially greater . . . than that which would have resulted from the subsequent injury alone."

A primary rule of statutory construction is that the words of the statute are deemed to be used in their ordinary and popular sense. *Slate v. Zitomer*, 275 Md. 534, 341 A. 2d 789 (1975); *Department v. Greyhound*, 247 Md. 662, 669, 234 A. 2d 255 (1967). The second paragraph of § 66 (1) expressly provides that the Fund shall pay no benefits "unless the combined effects resulting from a *previous* impairment and a *subsequent* accidental injury result in a permanent

---

2. Thomas's employer, the Baltimore County Revenue Authority, has not judicially challenged the finding that it should pay a sum representing a 40% disability. It does not express any opinion as to the Fund's liability concerning the pre-existing impairment.

disability exceeding 50 per centum (50%) of the body as a whole." (Emphasis supplied.) The word "previous" modifying impairment, means that an impairment existed or occurred before something else. It is clear that the "something else" is the subsequent injury, the compensable injury upon which the claim is based and which occurs after an existing impairment. Inherent in the use of the words "previous" and "subsequent" is the conclusion that the Legislature, in § 66, has viewed the permanent disability resulting from a subsequent accidental injury as comprising two distinct disabilities: that which results from the impairment which pre-exists the injury, and that which results from the subsequent injury. The liability for the final permanent disability is divided between the employer and his insurer and the Fund. The employer is responsible for compensating the employee for the disability attributable to the occupational injury. The Fund is liable for the disability attributable to the impairment existing before the injury. Thomas now asks compensation from the Fund for a disability which he admits arose *after* the May 25 accident and which is not attributable or related to that accident. This "disability" does not fall into either category of disability created by the Legislature, and is thus not compensable under § 66.

This interpretation of the statute is consistent with prior decisions. The Court discussed the purpose of § 66 in *Subsequent Injury Fund v. Pack,* 250 Md. 306, 308, 242 A. 2d 506 (1968), as follows:

> "Its purpose was to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event the previously disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling, but which, *coupled with previous impairment,* rendered the individual permanently disabled, thus exposing the employer to liability for the *cumulative effect of the prior and subsequent*

*injuries.* By the terms of the statute, if the employee sustained a subsequent compensable disability but the cumulative effect of the disability and the prior disability resulted in a permanent total or permanent partial disability, the employer and his insurance carrier would only be liable for compensation payable by reason of the subsequent injury. The Subsequent Injury Fund, funded by assessments imposed upon employers and insurers, by statute, would contribute the balance of the total award, so that the sum of the two payments would equal the compensation provided by statute for the combined effects of both the *previous disability* and the *subsequent injury.*" (Emphasis supplied.)

In a comprehensive review of the history of the Fund, the Court of Special Appeals said: "The concept of providing some means of compensating an injured employee for that portion of disability which *pre-existed* the injury upon which a current claim is based was first introduced into the law of Maryland when Acts of 1945, ch. 637 was passed and became effective on June 1, 1945." (Emphasis supplied.) *Subsequent Injury Fund v. Howes,* 11 Md. App. 325, 329, 274 A. 2d 131 (1971).

The Fund was established to encourage the hiring of workers who have a permanent impairment which may be an obstacle to employment, relieving the employer of liability for a disability attributable to the impairment which pre-dated the occupational injury. Its purpose is simply to remove an obstacle to employment and continuing employment, not to insure workers against a deterioration of the body occurring after and unrelated to the ocupational injury.

The Court of Special Appeals, in holding that Thomas was entitled to compensation for the later deterioration of the pre-existing injury, relied upon its decision in *Subseqent Inj. Fund v. Rinehart,* 12 Md. App. 649, 280 A. 2d 298 (1971). However, without expressing any opinion concerning the decision in that case, it is clear that *Rinehart* is

distinguishable from the instant case. In *Rinehart*, it was undisputed that the progress of a tumor, the pre-existing impairment and a cause ot death, was *accelerated* by the subsequent injury, and that death occurred sooner because of the injury. 12 Md. App. at 652, 653. There was a causal relationship between the subsequent injury and the deterioration of the pre-existing disease, the combination of which resulted in death. But this factor is not present here. Thomas does not contend that there is any relationship between the subsequent injury and the 40% disability attributable to the later deterioration of the pre-existing condition. In fact, he concedes that the previous impairment was neither aggravated nor accelerated by the subsequent injury.

As Thomas urges, the Workmen's Compensation Act is to be liberally construed in favor of injured employees. *Bethlehem-Fairfield Shipyard v. Rosenthal,* 185 Md. 416, 425, 45 A. 2d 79 (1945). But this does not mean that the Act should be construed to provide for compensation beyond that authorized by its provisions and purpose. The Act provides that the Subsequent Injury Fund should compensate the employee for the disability attributable to a *pre-existing* impairment. Its purpose is to encourage the employment of those who have an impairment which may be an obstacle or hindrance to employment. We can find nothing in the statute which suggests that the Subsequent Injury Fund must compensate a claimant for a disability which arises after a compensable injury, and is not aggravated by or related to the compensable injury.

> *Judgment of the Court of Special Appeals reversed.*
> *Remanded to the Court of Special Appeals with instructions to affirm the judgment of the Circuit Court for Baltimore County.*
> *Costs to be paid by the appellee Edward Thomas.*